CITY OF JACKSONVILLE, Appellant,

v.

GENERAL TELEPHONE COMPANY OF THE SOUTHWEST, Appellee.

No. 949.

Court of Civil Appeals of Texas, Tyler.

June 10, 1976.

Rehearing Denied July 8, 1976.

Emerson Stone, Jr., Jacksonville, for appellant.

Wayne L. Goodrum, Preston, Holt, Goodrum & Harper, San Angelo, for appellee.

MOORE, Justice.

Appellant, City of Jacksonville, instituted this suit against appellee, General Telephone Company, alleging that pursuant to the terms of its City Charter, the City was entitled to reimbursement in the sum of $4,050 for fees and expenses paid to a rate consultant employed by the City to assist in the investigation and hearing on appellee's request for a rate increase. The telephone

company answered with a general denial and specially denied the claim on the ground that the City contracted away its right to reimbursement for such fees and expenses by agreeing in the franchise to accept two percent (2%) of the telephone company's gross annual receipts, in lieu of any tax, license, charge, fee or rental for the use and occupancy of the streets, in lieu of any pole tax, inspection fee, easement or franchise tax, and in lieu of any imposition other than the usual general or special ad valorem taxes. The cause came on for hearing before the trial court on the telephone company's motion for summary judgment filed under the provisions of Rule 166–A, Texas, Rules of Civil Procedure. After a hearing, the trial court entered a summary judgment in favor of the telephone company from which the City perfected this appeal.

By a single point of error the City contends that the trial court erred in granting a summary judgment because Article X, Sec. 6, subparagraph 8 of the City Charter is controlling and created in the City a right of reimbursement for rate consultant fees and expenses as a matter of law. We are not in accord with the City's contention and accordingly affirm the judgment rendered by the trial court.

The City of Jacksonville is a home rule city created under the provisions of Article 1165, et seq., Tex.Rev.Civ.Stat.Ann. (1925).

In 1954 a City Charter amendment was adopted which provided as follows:

"ARTICLE X. FRANCHISES AND PUBLIC UTILITIES

Section 6. *Regulation of Franchise*

"Every grant, renewal, extension or amendment of a public utility franchise, whether so provided in the ordinance or not, shall be subject to the right of the Council:

\*       \*       \*       \*       \*       \*

8) To require such franchise holders who request an increase in rates, charges or fares, to reimburse the City for reasonable expenses incurred in employing rate consultants to conduct investigations, present evidence and advise the Council on such requested increase."

On October 3, 1961, the City enacted Ordinance No. 110 in which it entered into a franchise agreement with General Telephone. In Section 7 of the franchise agreement General Telephone agreed to pay annually two percent (2%) of its annual gross receipts from local exchange telephone transmission service rendered within the City as consideration for the franchise. This consideration is additionally stated to be compensation for the City's superintendence of the agreement which, in Section 11, includes the obligation of the City to fix rates which provide General Telephone with a fair return upon the fair value of its property.

Section 8 of Ordinance No. 110 granting the franchise to General Telephone contains the agreement of the City [1] that the consideration to be paid by General Telephone would be paid and received in lieu of any tax, license, charge, fee or rental for the use and occupancy of the streets, in lieu of any pole tax, inspection fee, easement or franchise tax, and *"in lieu of any imposition other than the usual general or special ad valorem taxes."* (Emphasis supplied.) The

1. "SECTION 8. PAYMENT OF CASH CONSIDERATION TO BE IN LIEU OF ANY OTHER PAYMENTS EXCEPT USUAL GENERAL OR SPECIAL AD VALOREM TAXES.

"The City agrees that the consideration set forth in the preceding section hereof shall be paid and received in lieu of any tax, license, charge, fee, street or alley rental or any other character of charge for use and occupancy of the streets, alleys, and public places of the City; in lieu of any pole tax or inspection fee tax; in lieu of any easement or franchise tax, whether levied as an ad valorem, special or other char-

acter of tax; and in lieu of any imposition other than the usual general or special ad valorem taxes now or hereafter levied. Should the City not have the legal power to agree that the payment of the foregoing cash consideration shall be in lieu of the taxes, license, charges, fees, rentals, and easement or franchise taxes aforesaid, then the City agrees that it will apply so much of said payment as may be necessary to the satisfaction of the Telephone Company's obligations, if any, to pay any such taxes, licenses, charges, fees, rentals, and easement or franchise taxes."

City further agreed in Section 8 that in the event the City did not have the power to agree that the consideration should be in lieu of such other charges, then it was agreed that the City would apply the consideration paid to the satisfaction of such other charges.

In October 1973, General Telephone made application to the City for authority to increase telephone rates within the city showing that the existing rates failed to provide a fair return as agreed. The City Council hired Dr. Jack Hopper to assist in evaluating the request. Subsequent to the resolution of the rate request and the institution of new rates, the City requested payment by General Telephone of Dr. Hopper's fee in the amount of $4,050. Such payment was declined on the basis, inter alia, that the City had agreed to accept the two percent gross receipt payment prescribed by the franchise agreement in lieu of any other imposition such as Dr. Hopper's charges.

■ Although Article X, Section 6 of the City Charter conferred a right on the City Council to require reimbursement even though the franchise ordinance did not so provide, we conclude that under the terms of the franchise the City elected to waive its right of reimbursement.

■ It is generally conceded that a franchise is the subject of a contract between the grantor and grantee and that it does in fact constitute a contract when, as here, the requisite element of consideration is present. It is binding mutually upon the grantor and grantee and is enforceable according to its terms and tenor. 36 Am. Jur.2d Franchises sec. 6, p. 728 (1968).

At the time the City Council granted the franchise in question, it was bound with notice of the City Charter provision granting the City a right of reimbursement. Nevertheless the Council agreed to accept two percent of the telephone company's gross receipts as the total consideration for the franchise. The franchise stipulated that such consideration was in lieu of any other imposition other than ad valorem taxes.

■ It is now settled that a city may bind itself by a franchise so long as it does not surrender or contract away its police or governmental power. *Texas Power & Light Company v. City of Garland*, 431 S.W.2d 511, 517 (Tex.1968). The action of the City Council in electing to contract away its right of reimbursement does not amount to a surrender of its police or governmental power. *Southwestern Bell Telephone Co. v. City of Port Arthur*, 491 S.W.2d 187 (Tex.Civ.App.—Beaumont 1973, writ ref'd n. r. e.). We hold that when the City agreed in the franchise to accept a stipulated amount of the company's gross receipts in lieu of any other imposition other than ad valorem taxes, the City elected to waive its charter provisions giving a right of reimbursement for consultant fees and expenses.

■ We are not in accord with the appellant's contention that the City Council was without power to elect to waive the charter provision in question. The charter provision vests in the City Council discretion to determine whether a franchise holder will be required to reimburse the City. The charter contains no limitation upon the method by which the City Council elects to be reimbursed. Since the charter provision in question went no further than to grant the council a right to require reimbursement, the enforcement was not mandatory. It has been held that the City Council can waive compliance with a charter provision where the charter does not prohibit such a waiver. *Cawthorn v. City of Houston*, 231 S.W. 701, 704, 705 (Tex.Comm'n App.1921, holding approved); *Liberty Mutual Insurance Company v. City of Fort Worth*, 524 S.W.2d 743, 746 (Tex.Civ.App.—Fort Worth 1975, writ dism'd).

Even if it could be said that the City Council did not have the legal power to agree that specified gross receipts charges would be in lieu of all other impositions other than ad valorem taxes, we think the summary judgment proof demonstrates, as a matter of law, that the City had no cause of action for reimbursement because of oth-

er stipulations contained in Section 8 of the franchise.

The franchise agreement provides that General Telephone is to pay two percent (2%) of certain of its gross receipts as consideration for the franchise grant and as compensation for the City's supervision of the agreement which obligates the City to regulate and fix the rates of the company. Section 8 of Ordinance No. 110 contains the agreement of the City that the consideration would be paid and received in lieu of any tax, license, charge, fee or rental for the use and occupancy of city streets, in lieu of any pole tax, inspection fee, easement or franchise tax and in lieu of any imposition other than the usual general or special ad valorem taxes. In the last sentence of Section 8 the City further agreed that should it not have the power to agree that the consideration should be in lieu of such other charges, then it would apply the consideration paid to the satisfaction of such other charges.

The record reveals that all payments required under the franchise agreement have been made and that each and every payment exceeds the $4,050 claimed by the City for consultant fees. Thus, in accordance with the agreement the City was obligated to apply the gross receipts to the payment of the consultant's fee. Consequently, no duty rested on the telephone company to pay the consultant's fees and expenses.

While the telephone company maintains that the summary judgment may also be sustained on the ground that the Charter provision is void because it is in conflict with Article 11.06, Tex.Rev.Civ.Stat.Ann., Tax.-Gen.,[2] we do not find it necessary to decide the case on that basis. Irrespective of the validity of the Charter provision, the summary judgment proof conclusively establishes that no liability on the part of appellee existed and therefore appellee is entitled to a summary judgment as a mat-

ter of law. *Swilley v. Hughes*, 488 S.W.2d 64 (Tex.1972).

The judgment of the trial court is affirmed.

---

2. Article 11.06 subsection (1) imposes upon telephone companies operating within the State of Texas an occupation tax based upon gross receipts. Subsection (2) of the Article provides that no city shall impose an occupation tax, or charge of any sort for the privilege of doing business, upon anyone required to pay an occupation tax under Article 11.06.