CITY OF FORT WORTH, Appellant,

v.

GENE HILL EQUIPMENT COMPANY, INC., Appellee.

No. 2-88-034-CV.

Court of Appeals of Texas, Fort Worth.

Nov. 17, 1988.

Wade Adkins, City Atty., and Susan M. Barilich, Asst. City Atty., Fort Worth, for appellant.

Earl Rutledge, Hurst, for appellee.

Before BURDOCK, HILL and FARRIS, JJ.

## OPINION

FARRIS, Justice.

The City of Fort Worth appeals from the judgment in favor of Gene Hill Equipment Company, Inc. (Gene Hill) in a contract dispute over payment for "extra" construction work done at the City's Citran facility. During excavation for the installation of underground fuel storage tanks, Gene Hill encountered rock, subsurface water, and unstable soil, for which it alleges it incurred additional expense. The contractual dispute centers on who was to bear the cost of the additional work. Based upon the jury's findings that the contract provided the City would pay for the reasonable cost of work necessitated by abnormal conditions and that such conditions were encountered, the trial judge awarded Gene Hill $15,523.87 for the extra work done, prejudgment interest and its attorneys' fees and court costs.

Having raised twenty points of error, the City waived points four, eight, nine, thirteen, and fifteen through nineteen during oral argument. In the remaining points before this court, the City contends that Gene Hill is: (1) not entitled to sums in excess of the base contract price due to its failure to notify the City of abnormal conditions and failure to obtain an executed change order prior to commencing work;

(2) not entitled to recover under the doctrine of quantum meruit; and (3) not entitled to attorneys' fees. The City also argues that the trial court erred in not awarding the City liquidated damages for Gene Hill's late completion of the project.

We sustain the City's fourteenth point of error in part because there was insufficient evidence to support the jury's finding that the construction of the retaining wall and removal of subsurface water were performed with *prior notice to and approval* from the City's engineer. We overrule the City's points one, three, five, ten and eleven because the contract governing project construction did not require a change order for extra work. Points of error two, seven and twelve are overruled because the doctrine of quantum meruit is not applicable in this case and was not a basis for awarding judgment in the trial court. Point of error six is overruled on the ground that Gene Hill is statutorily entitled to attorneys' fees from the City for a suit founded on contract on a cause of action arising prior to June, 1987. We sustain the City's twentieth point of error on the ground that the City is entitled as a matter of law to recover liquidated damages for Gene Hill's delay in completing the project.

## I. THE CHANGE ORDER

■ The City contends that Gene Hill is not entitled to sums in addition to the base contract price in the absence of an executed change order and argues that the trial court erred in (1) overruling its motion for instructed verdict, (2) submitting issues to the jury as to whether the City agreed to pay for extra work necessitated by abnormal subsurface conditions, and (3) denying its motion for judgment notwithstanding the verdict as to these issues. We find that the contract did not require the change order process be followed with respect to extra work due to abnormal conditions and overrule points one, three and ten.

The contract between the City and Gene Hill contained three provisions addressing subsurface conditions: (1) Paragraph B–2 of the General Conditions provided that the owner's survey describing the physical characteristics of the site was for information only. The owner would not be liable for inaccuracies. B–2 also provided that the contractor inspect the site and be familiar with any obstacles to the work required. (2) Gene Hill's bid qualification:

Gene Hill Equipment Co. shall not be held responsible for unknown underground conditions such as utilities, concrete thicker than normal construction practices requires, natural conditions such as solid rock, rotten soil, running sand and/or water.

(3) The City's response to the bid qualification:

Since rock, unstable soil or water are not included in any surveys we might provide, these unknown subsurface conditions are not covered by this General Condition. In this case we do not know what abnormal subsurface conditions may exist and have not asked you to verify what these conditions might be or to assume responsibility for same. Your bid is assumed to reflect "normal" excavation: if abnormal conditions are encountered, we are to be notified so that we may verify the condition and reach agreement with you on the manner in which to proceed.

The City argues Gene Hill is not entitled to additional sums absent a charge order; however, the contract does not contain any language requiring change orders be used. The only references to change orders refer either to "Section ——" or "Section L", which is not included in the contract. In support of its position, the City relies upon the following provision of the Fort Worth City Charter:

When it becomes necessary to make changes in the plans or specifications after performance of a contract for public works has been commenced, or it becomes necessary to decrease or increase the quantity of work to be performed, such change, alteration or modification shall be made only when a change order therefor is authorized by the city council upon the written recommendations of the city manager.

. . . .

No such change, alteration, or modification shall be valid unless the price to be paid for the work, materials, equipment or supplies has been agreed upon in writing and signed by the contractor and the city manager upon the authorization of the city council.

Fort Worth City Charter, Ch. 27, sec. 14 (1986).

In its brief, the City argues that section D–8 of the contract required Gene Hill to comply with the charter provisions. The City is mistaken. Section D–8 provides that if the contractor performed work in violation of or contrary to the charter without first providing *notice* to the City, the contractor would bear the cost of that work. The contract provisions set out above clearly would provide the requisite notice to the City.

The City also asserts that interpreting the contract to allow Gene Hill to recover "any reasonable sums" incurred in excess of the base contract price would mean that the contract was awarded in violation of state competitive bidding regulations for municipalities and the Fort Worth Charter, and that such an interpretation would be unenforceable because of indefiniteness and uncertainty regarding a critical aspect (price) of the agreement. We are not persuaded.

As the City notes in its brief, the state competitive bidding requirements applicable to municipalities and the counterpart requirements in the Fort Worth Charter are designed to ensure competent, low cost work. Both, however, contemplate that changes occasionally need to be made which would alter the original bid price, and accordingly confer authority to authorize changes and adjust the amount of payment. *See* former TEX.REV.CIV.STAT. ANN. art. 2368a (Vernon Supp.1982);[1] Fort Worth City Charter, Ch. 27, sec. 14

(1986). The language of the state statute authorizing municipalities to approve changes affecting contract price by approving change orders is phrased in permissive rather than mandatory terms. In contrast to other sections of the article, the section discussing changes in plans and specifications *does not* contain a clause stating that failure to comply with the terms of the section will void the contract and render it unenforceable. *See* former TEX.REV.CIV. STAT.ANN. art. 2368a, sec. 2a (Vernon Supp.1982),[2] *but cf.* former TEX.REV.CIV. STAT.ANN. art. 2368a, sec. 2 (Vernon Supp.1982).[3]

Although the analogous provision found in section 14 of the City Charter, cited above, requires that the change order process be used, a municipality may waive its charter provisions. *City of Jacksonville v. General Telephone Co.*, 538 S.W.2d 253, 255 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.); *Liberty Mutual Ins. Co. v. City of Fort Worth*, 524 S.W.2d 743, 746 (Tex.Civ.App.—Fort Worth 1975, writ dism'd w.o.j.). In approving the contract between the City and Gene Hill, which explicitly provided that Gene Hill would not be responsible for abnormal conditions and contained no language requiring that change orders be used, the city council waived the City's right to enforce this charter provision. We note this did not in any way affect the City's right to approve proposed extra work upon notification.

In arguing that this interpretation would render the contract too vague and uncertain to be enforceable, the City relies upon *Retama Manor Nursing Centers, Inc. v. Cole*, 582 S.W.2d 196, 200 (Tex.Civ. App.—Corpus Christi 1979, writ ref'd n.r. e.). The case does not hold, as the City contends, that a contract lacking a price

---

1. Act of May 8, 1953, ch. 105, sec. 2a, 1953 Tex.Gen.Laws 383, *repealed by* Act of May 21, 1987, ch. 149, sec. 49, 1987 Tex.Gen.Laws 1306, 1307 (presently contained in TEX.LOCAL GOV'T CODE ANN. sec. 252.048 (Vernon 1988)).

2. Act of May 8, 1953, ch. 105, sec. 2a, 1953 Tex.Gen.Laws 383, *repealed by* Act of May 21, 1987, ch. 149, sec. 49, 1987 Tex.Gen.Laws 1306, 1307 (presently contained in TEX.LOCAL GOV'T CODE ANN. sec. 252.048 (Vernon 1988)).

3. Act of May 21, 1931, ch. 163, sec. 2, 1931 Tex.Gen.Laws 269, 271, *repealed by* Act of May 21, 1987, ch. 149, sec. 49, 1987 Tex.Gen.Laws 1306, 1307 (presently contained in TEX.LOCAL GOV'T CODE ANN. sec. 252.041 (Vernon 1988)).

term would be unenforceable because of uncertainty. It does hold that the written contract, manifesting the terms of an oral agreement by including, among other terms, price, time for payment, length of construction and materials, was definite enough to render the oral agreement to sign the contract enforceable. Parties may agree upon some of the terms of a contract and understand them to be an agreement, leaving other portions to be made later. *Scott v. Ingle Bros. Pacific, Inc.*, 489 S.W. 2d 554, 555–56 (Tex.1972); *citing* 1 COR-BIN ON CONTRACTS, sec. 29, at 93–95 (1963). Case law holds that a contract need not specify price in order to be enforceable. "[I]f no price is stated, it will be presumed that a reasonable price was intended...." *Ford Motor Company v. Davis Brothers, Inc.*, 369 S.W.2d 664, 668–69 (Tex.Civ.App.—Eastland 1963, no writ), *citing* 17 C.J.S. *Contracts* sec. 36(2) at 659 (1963).

The City also argues that the excavation work would not qualify as "extra" work entitling Gene Hill to additional sums because it was reasonably necessary to complete the contract. This argument is without merit, as it ignores the distinction between extra work required to bring a project to completion and work in addition to that needed to complete the project. The terms of the contract contemplate the former definition of extra work.

The terms of the contract clearly provide that the contract price of $84,100 assumed normal excavation, that Gene Hill was not responsible for abnormal conditions, and that Gene Hill was to notify the City if abnormal conditions arose so that a decision could be reached as to how to proceed. It contains no language that would require Gene Hill to submit change orders in order to receive compensation for extra work. Absent any contractual requirement that the change order process be followed, the fact that it was not followed cannot act to bar payment of sums for work in addition to that contemplated for normal conditions. We overrule points of error one, three and ten.

## II. NOTICE

The second argument the City advances to support its position that it was not required to pay sums in addition to the base contract price is that Gene Hill violated the contract provision requiring that he notify the City of abnormal conditions and receive approval before commencing extra work.

In point of error fourteen, the City claims the trial court erred in denying its motion for new trial because there was insufficient evidence to support the jury's finding in special issue five that Gene Hill performed the following extra work due to abnormal conditions upon the prior approval of the city engineer: rock excavation, construction of a retaining wall, and removal of subsurface water. We overrule this point with respect to the rock excavation and sustain with respect to the retaining wall and removal of water.

An assertion that the evidence is "insufficient" to support a finding of fact can mean that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *See id.*

The jury heard testimony from both David Taylor of Gene Hill and Eddie Harvey, the City's engineer, that Mr. Harvey was notified when the rock was encountered, informed that its excavation would cost extra and that he allowed this work to take place. Accordingly, we find there was sufficient evidence to support the jury's finding with respect to the rock excavation. Thorough review of the record, however, does not reveal any indication that Mr. Harvey was informed of the unstable soil and subsurface water or the need to remove the water and construct a retaining wall to alleviate the problems caused by them. In the absence of any evidence that Mr. Harvey approved of this work, we hold there is insufficient evidence of probative value to support the jury's finding that the construction of the retaining wall and removal of subsurface water were performed

with his prior approval. We sustain the City's fourteenth point of error in part and pursuant to TEX.R.APP.P. 85(b), suggest that Gene Hill remit $3,425.81, that part of the verdict representing the jury's finding with respect to this work. *See Larson v. Cactus Utility Co.*, 730 S.W.2d 640, 641 (Tex.1987).

In points of error five and eleven, the City argues in the alternative that the trial court erred in submitting special issue five to the jury and in denying its motion for judgment notwithstanding the verdict because there was no evidence that the City's engineer, Mr. Harvey, had authority to approve payment for the work without an executed change order. These points are without merit for two reasons. First, a change order is not a prerequisite to Gene Hill's right to be paid for extra work. Second, the authority or lack thereof given by the City to its engineer to approve payment for extra work is irrelevant to the issue presented to the jury: whether he gave prior approval for the extra work. In special issue two, the jury found that the contract provided that the City would pay Gene Hill the reasonable cost of work due to abnormal subsurface conditions. This finding was not challenged. Thus, as the City had agreed to pay for such work, the question of whether Gene Hill was entitled to additional sums would turn on whether it gave notice of the conditions as required by the contract, not whether the engineer had authority to approve payment. Appellant's fifth and eleventh points of error are overruled.

## III. QUANTUM MERUIT

In points of error two, seven and twelve, the City argues that the trial court erred in: (1) overruling its motion for instructed verdict; (2) submitting issues to the jury regarding the performance of work not covered by the contract price; and (3) overruling its motion for judgment notwithstanding the verdict; all on the grounds that Gene Hill is not entitled to recover under the doctrine of quantum meruit. We disagree and overrule these points.

■ Because Gene Hill is entitled to recover under the terms of the contract, the inapplicability of the doctrine of quantum meruit in this case did not result in error. In order to recover under quantum meruit, it must be established that the payment sought for services and materials was not covered by an express contract. *Morales v. Dalworth Oil Co., Inc.*, 698 S.W.2d 772, 774 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.). In response to special issue two, the jury found that the contract provided that the City would pay Gene Hill for the reasonable cost of work necessitated by abnormal subsurface conditions. The jury's finding that the contract provided for payment is not challenged on this appeal.

Quantum meruit, alleged by Gene Hill as an alternate theory of recovery, was neither applicable nor relied upon in rendering judgment and thus did not lead to any error.

## IV. ATTORNEY FEES

The City argues in its sixth point of error that the trial court erred in submitting an issue to the jury regarding attorney fees. The City contends there is no evidence that Gene Hill is entitled to attorney fees in this case because the statute under which Gene Hill pleaded for attorney fees, former TEX. REV.CIV.STAT.ANN. art. 2226 (Vernon Supp.1984),[4] could not be applied against a municipality. We disagree and overrule this point of error.

Article 2226, in effect when the contract was executed and demand for payment was made, provided that:

Any person, corporation, partnership, or other legal entity having ... suits founded on oral or written contracts, may present the same to such persons or corporation or to any duly authorized agent thereof; and if, at the expiration of 30 days thereafter, payment for the

---

**4.** Act of March 26, 1923, ch. 144, sec. 1, 1923 Tex.Gen.Laws 312, *repealed by* Act of June 16, 1985, ch. 959, sec. 9(1), 1985 Tex.Gen.Laws 3322 (presently contained in TEX.CIV.PRAC. & REM. CODE ANN. sec. 38.001 (Vernon 1988)).

just amount owing has not been tendered, the claimant may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees ... This act shall be liberally construed to promote its underlying purposes.

The City argues that because the statute did not expressly state it was applicable to a *municipal* corporation, it could not be applied against the City of Fort Worth. In 1986 the Texas Supreme Court held that article 2226 was applicable to municipal corporations acting in their proprietary roles. *Gates v. City of Dallas,* 704 S.W.2d 737 (Tex.1986).

In reaching the conclusion that the legislature intended article 2226 to apply to municipal corporations, the court considered the purpose of the statute and its impact on the municipality's powers of self-government as well as rules of statutory construction. It noted that the "underlying purpose of the statute is to encourage contracting parties to pay their just debts and discourage ... vexatious, time-consuming and unnecessary litigation...." *Id.* at 740. It reasoned that the "only power the statute could be said to limit would be the power to freely breach any contract simply because the breaching party is a municipal corporation." *Id.* at 740. The supreme court's holding in *Gates* is clearly applicable here. When the City contracted with Gene Hill for the installation of underground fuel storage tanks, it was operating in its proprietary capacity, namely performing functions primarily for the benefit of those within the limits of the municipality. *City of Crystal City v. Crystal City Country Club,* 486 S.W.2d 887, 889 (Tex.Civ. App.—Beaumont 1972, writ ref'd n.r.e.).

The City argues that the *Gates* decision is not applicable to this case in light of the legislative enactment of TEX.REV.CIV. STAT.ANN. art. 1269j–13 (Vernon Supp. 1988), which provides:

A city ... may not be considered a corporation under a state statute governing corporations unless the statute extends its application to a city ... by express use of the term "municipal corporation,"

"municipality," "city," "town," or "village." It is the intent of the legislature that the limitation provided by this section apply regardless of whether the city, town, or village is acting in a governmental or proprietary function.

The statute was enacted in June of 1987, five and one-half years after the work was completed and payment demanded, three and one-half years after suit was filed. The City acknowledges that the application of the statute in this case would be retrospective but argues that there is no prohibition to applying the statute retrospectively because it would not operate to deprive or impair any vested, substantive rights. The City's argument would be persuasive if the law were written to apply retrospectively as well as prospectively. The City is correct in stating that statutory attorney fees are in the nature of a remedy, not a vested right. They are not part of a demand or claim, but, rather, constitute a penalty designed to discourage unnecessary litigation. *See McKinley v. Drozd,* 685 S.W.2d 7, 11 (Tex.1985); *Huff v. Fidelity Union Life Ins. Co.,* 158 Tex. 433, 312 S.W.2d 493, 501 (1958). Thus, if the legislature had mandated that article 1269j–13 was to apply retrospectively, it could be so applied because statutes affecting remedies or procedures may be applied retroactively. However, absent any language indicating an intent that article 1269j–13 is to apply retrospectively, its application will be prospective only.

If an Act is intended to operate retrospectively, that intention must be clearly and unmistakably shown in language of the Act, and it will not ordinarily be inferred.... If there is any doubt about the intention to have an Act operate retrospectively, the intention will be resolved against the retrospective operation of such Act.

*Government Personnel Mut. Life Ins. Co. v. Wear,* 151 Tex. 454, 251 S.W.2d 525, 529 (1952).

As article 1269j–13 applies prospectively only, it is not applicable in this case. The supreme court has held that article 2226 applied to municipal corporations operating

in their proprietary capacity. Municipal corporations can be held liable for attorneys' fees when the underlying cause of action arose prior to the enactment of article 1269j–13 in June of 1987. *Government Personnel Mut. Life Ins.*, 251 S.W.2d at 528. Accordingly, we hold that the trial court did not err in submitting an issue to the jury regarding Gene Hill's attorney fees. Point of error six is overruled.

## V. LIQUIDATED DAMAGES

 In its twentieth point of error, the City argues that the trial court erred in failing to offset the damages awarded to Gene Hill with an award of liquidated damages due the City under the terms of the contract. We agree.

The contract provided that $50 per day would be assessed as liquidated damages for each day the project exceeded its scheduled completion date. At trial, undisputed evidence was presented that Gene Hill's work was completed nineteen days late.

Gene Hill contends that documentary evidence introduced at trial established that the City applied the liquidated damages provision of the contract before making final payment to Gene Hill. Referring to its March 25, 1982 application for payment, Gene Hill contends that the deduction of a $756 retainage from its request to the City for payment represents the deduction of liquidated damages. There was no evidence presented that this deduction was for liquidated damages. Evidence was presented, however, that the $756 omitted reflected a retainage held by the City until minor corrections were made.

We find the trial court erred in failing to enter judgment for the City for liquidated damages and sustain point of error twenty. As a matter of law, the City is entitled to liquidated damages of $50 per day for nineteen days. The judgment of the trial court will be modified to award the City $950 in liquidated damages.

In summary, points of error one, two, three, five, six, seven, ten, eleven and twelve are overruled. Point of error fourteen is sustained in part and overruled in part; and point of error twenty is sustained.

In conclusion, we hold: (1) the judgment of the trial court is modified to allow the City liquidated damages for construction delay in the amount of $950, by reducing the award to Gene Hill to $14,573.87; (2) pursuant to TEX.R.APP.P. 85(b), we suggest that Gene Hill remit $3,425.81, representing that portion of the judgment awarding Gene Hill damages for the cost of constructing a retaining wall and removal of subsurface water. If remittitur is filed within fifteen days of this date, we shall affirm the judgment as modified to reflect the award of liquidated damages to the City. If remittitur is not filed within fifteen days, we shall reverse and remand for new trial that portion of the judgment declaring the City of Fort Worth liable for the costs of the retaining wall and removal of subsurface water, and affirm the remainder of the judgment as modified.

Before FENDER, C.J., and BURDOCK and FARRIS, JJ.

## OPINION ON REMITTITUR

FARRIS, Justice.

Remittitur having been submitted within the time allowed, the judgment of the trial court is reformed to delete the award of $3,425.81, representing that portion of the judgment awarding Gene Hill Equipment Company, Inc., damages for the cost of constructing a retaining wall and removal of subsurface water. As reformed, the judgment is affirmed.